359 S.E.2d 593

**STATE of West Virginia**

v.

**Larry Gene JENNINGS.**

No. 17189.

Supreme Court of Appeals of
West Virginia.

July 22, 1987.

Mary Rich Maloy, Asst. Atty. Gen., for appellant.

Robert M. Nunley, Robert E. Holroyd, Princeton, for appellee.

PER CURIAM:

Larry Gene Jennings appeals his conviction for unlawful wounding by a jury in the Circuit Court of Mercer County. The defendant asserted four assignments of error: that the circumstantial evidence presented by the State did not constitute a prima facie case; that the court erred in admitting into evidence testimony that the defendant fled the jurisdiction to avoid prosecution; that the trial court allowed prejudicial remarks by the prosecutor during her closing argument; and that the trial court improperly instructed the jury on the defendant's presumption of innocence. After examining the record as a whole, we conclude that the trial court committed no reversible error and we affirm the conviction.

On the night of September 20, 1982, a car stopped in front of a trailer on the Athens Road in Mercer County and the passenger in the car fired three shotgun blasts at the trailer. One of these shots penetrated the trailer and struck Darrell Tracy Lockhart, wounding him. An occupant of the trailer identified the man doing the shooting as blonde haired, but could not describe the driver of the car. Approximately ten minutes earlier, the defendant and his blonde-haired brother, James Jennings, had been at the trailer and had been involved in an altercation with Johnny Ray Jarrels who rented the trailer from another Jennings brother, Petey. The altercation ended when Mr. Jarrels slapped Larry and James Jennings.

Investigating Trooper R.D. Fulknier obtained a malicious wounding warrant for the defendant and James Jennings. In the early morning on the day after the shooting, the trooper sought the defendant and James Jennings at their father's home where they sometimes resided and where he found the car used in the shooting. The defendant and James Jennings were not at the house. They were located twenty-four days later. James Jennings pled guilty to unlawful wounding and was sentenced to serve time in the State penitentiary.

The defendant argues that the circumstantial evidence presented by the State did not constitute a prima facie case and, therefore, the court erred in refusing to direct a verdict of acquittal. The general rules regarding circumstantial evidence in this jurisdiction are briefly stated in *State v. Noe*, 160 W.Va. 10, 15, 230 S.E.2d 826, 829–30 (1976):

> "[C]ircumstantial evidence will not support a guilty verdict unless the fact of guilt is proved to the exclusion of every reasonable hypothesis of innocence; and circumstances which create a mere suspicion of guilt but do not prove the actual commission of the crime charged, are not sufficient to sustain a conviction." (Citations omitted).

This Court set forth standards for determining the sufficiency of evidence in a circumstantial case at Syllabus Point 1 in *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), wherein we held:

> "In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the State's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

If the evidence is wholly circumstantial, but as to time, place, motive, means, and

conduct, it concurs in pointing to the accused as the perpetrator of the crime, then the accused may properly be convicted. *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967). In this case, the State offered no direct evidence that the defendant was involved in the shooting. The evidence did show that the shooting occurred ten minutes after the altercation, in the same place as the altercation occurred, and that the defendant had a motive, payback for Mr. Jarrels' slapping the defendant and his brother.

■ Additionally, a State witness stated the loud sound of the car present during the shooting was the same as the sound of the car driven by the Jennings brothers ten minutes earlier. The defendant's flight after the crime is conduct the jury may consider as evidence of the defendant's guilty conscience or knowledge. The record also contains an agreed stipulation that James Jennings pled guilty to unlawful wounding. While the evidence is not extensive, when considering the close proximity in time and the motive, we cannot say that the evidence was manifestly inadequate or that an injustice has been done.

■ In Syllabus Point 6 of *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981), we held:

"In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an *in camera* hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect."

In this case, the trial court held an *in camera* hearing prior to presenting testimony of flight. The trial court determined that the probative value of the flight evidence outweighed any possible prejudicial effect. After presentation of the flight testimony, the trial court gave a specific limiting instruction cautioning the jury on the use of flight evidence.

The defendant argues that he did not know that a warrant had been issued for his arrest. The State has the burden of proving that the defendant "fled under circumstances such that would indicate a desire to escape or avoid prosecution due to a guilty conscience or knowledge." *State v. Payne*, 167 W.Va. at 267, 280 S.E.2d at 81. Other jurisdictions hold knowledge may be established by circumstantial evidence. *United States v. Myers*, 550 F.2d 1036 (5th Cir.1977); *State v. Piskorski*, 177 Conn. 677, 419 A.2d 866 (1979); *Bruce v. State*, 375 N.E.2d 1042 (Ind.1978); *Commonwealth v. Whack*, 482 Pa. 137, 393 A.2d 417 (1978).

In *Commonwealth v. Whack*, 482 Pa. at 142, 393 A.2d at 420, the court found that the circumstances raised a permissible inference that the defendant was aware he was sought by the police when evidence showed that the defendant "abandoned his normal pattern of living and could not be located at those places where his regular pursuits would place him."

Here, the defendant was seen in Mercer County on the night of the shooting, but was not found in the county at 7:00 a.m. the following morning. He did not reappear for twenty-four days. The State presented Trooper Fulknier's testimony that the defendant's father with whom the defendant usually resided part of the time was told the day after the shooting that the police had a warrant for the defendant's arrest. He also testified that he talked with various members of the defendant's family.

The defendant presented no evidence to explain his absence. This unexplained abandonment of his usual residence close in time to the shooting is a sufficient basis for a permissible inference that the defendant knew he was being sought by the police. Under the circumstances of this case, the trial court did not err in admitting the flight evidence.

■ The defendant next asserts that the prosecutor's references to the defendant as a "coward" during her closing argument inflamed the jury and that reversible error

occurred when the court failed to grant the motion for mistrial.

We note initially, as the State points out, that no objection was made to this statement at the time it was made. It was not until after the jury retired that counsel made a motion for a mistrial. We have traditionally required a timely objection to be made in this situation so that the judge may take appropriate steps to take corrective action. We summarized this law in Syllabus Point 7 of *State v. Cirullo*, 142 W.Va. 56, 93 S.E.2d 526 (1956), as follows:

> " 'Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court.' Point 6, syllabus, *Yuncke v. Welker*, 128 W.Va. 299 [36 S.E.2d 410]."

*See also* Syllabus Point 2, *State v. Trogdon*, 168 W.Va. 204, 283 S.E.2d 849 (1981); *State v. Coulter*, 169 W.Va. 526, 530, 288 S.E.2d 819, 821 (1982). Consequently, we decline to discuss this ground of alleged error.

■ Much the same problem exists as to the trial court's instruction as to the possible jury verdicts which stated: "The Court instructs the jury that under the indictment in this case, if warranted by the evidence, you may find any one of the following verdicts, namely: 1. Guilty of malicious wounding; 2. Guilty of unlawful wounding; and 3. Not guilty."

■ First, the defendant made no objection initially to this language. Second, during the jury deliberations, the jury sent an inquiry to the court about the possible verdict of unlawful wounding. The court, with the express concurrence of defense counsel, reread a portion of the instructions which included this language. The defendant's failure to object waives this alleged error. *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983); *see* Rule 30, W.Va. R.Crim.P.

For the reasons stated, we perceive no reversible error and, accordingly, the judgment of the Circuit Court of Mercer County is affirmed.

Affirmed.